TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00691-CR







Willie Deshotel, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF ANGELINA COUNTY, 159TH JUDICIAL DISTRICT


NO. 18,491, HONORABLE GERALD A. GOODWIN, JUDGE PRESIDING








 Appellant Willie Deshotel appeals his conviction for aggravated robbery. See Tex.
Penal Code Ann. §§ 29.02 (a)(2), 29.03 (a)(2) (West 1994). He pleaded guilty to the trial court
without a plea bargain. The court sentenced him to twelve years imprisonment. The sole issue
is whether appellant's plea of guilty was voluntary. We will affirm.


Background

 The indictment alleged that appellant committed aggravated robbery with a deadly
weapon on or about October 30, 1995. The indictment was presented November 14, 1995.
Appellant pleaded guilty on November 30, 1995. There was no plea bargain. The trial court
ordered a presentence investigation. Appellant failed to appear for his sentencing hearing on June
6, 1996, and a capias issued. At a sentencing hearing on July 8, 1997, appellant's confession was
admitted and he testified in detail about the offense. The evidence showed that appellant and three
others were riding around and decided to "rob a faggot." The four lured the victim to a back
road. In the attack, appellant's role was to choke the victim while two others pulled him out of
his car and another menaced him with a baseball bat. They took his wallet and a CD player. 
Appellant shared in the proceeds of the robbery. 

 The record of the sentencing hearing shows the community corrections 
department's presentence report recommendation was for deferred adjudication. The State argued
that deferred adjudication would not be appropriate in light of appellant's failure to appear for the
scheduled sentencing hearing, absenting himself from the county for over a year, and, during that
absence, impregnating a fifteen-year-old girl. She testified at the sentencing hearing. The trial
court indicated that the seriousness of the original aggravated robbery and appellant's conduct in
absenting himself from the court's jurisdiction militated against following the probation
department's recommendation of deferred adjudication. The trial court sentenced appellant to 
twelve years imprisonment. 

 Appellant timely moved for new trial on September 9, 1997, a hearing was held on
October 23, 1997, and the trial court denied the motion upon completion of the hearing. In his
motion for new trial, appellant contended that his plea was not voluntary because he did not
understand the consequences of entering his plea of guilty and believed that he would get deferred
adjudication probation. He also contended that he was not informed and did not understand that
if he were sentenced to prison he would actually have to serve a portion of the sentence before
being considered for parole. Appellant further contends that his limited education and difficulty
in learning hampered his understanding of the consequences of his plea of guilty. 

 The only witnesses at the hearing on the motion for new trial were appellant and
his trial attorney. Appellant testified that he believed that if he pleaded guilty and the presentence
investigation revealed no other felonies, he would get deferred adjudication probation. He
understood that he was not eligible for regular probation. His attorney explained to him that there
was a possibility that a jury would find him guilty if he had a jury trial. His attorney told him that
he was eligible for deferred adjudication. (1) He acknowledged that his lawyer never told him that
he was assured of getting deferred adjudication. He testified that the judge told him that he faced
between five and ninety-nine years in prison and that the judge never told him he was assured of
deferred adjudication. Appellant testified that he quit school in the tenth grade, had attended
special school because his learning was slow, but could read "fairly well" and could write. He
testified that before his lawyer was appointed, his bondsman told him to plead guilty and get
probation. 

 The lawyer testified it is his habit and practice to go over the document designated
"admonishments, written waiver and plea of guilty" with his client. He never told appellant that
he was assured of receiving deferred adjudication probation. He advised his client of the range
of punishment of five to ninety-nine years. He said he did not recall knowing that appellant had
a limited education or learning disability. However, the lawyer said he always puts the
information in simple terms that a nine-year-old can understand. The lawyer testified that he did
not say anything that would lead appellant to believe that he would definitely get deferred
adjudication probation, and appellant did not say anything to him indicating that he expected
deferred adjudication probation. 


Discussion and Holding

 Appellant relies on Brady v. United States, 397 U.S. 742, 748 (1970), for the
proposition that a guilty plea, as a waiver of constitutional rights, not only must be voluntary, but
must be a knowing, intelligent act done with sufficient awareness of the relevant circumstances
and likely consequences. This Court has applied this rule. See In re E. Q., 839 S.W.2d 144,146
(Tex. App.--Austin 1992, no writ). We have said: "A defendant who enters a plea may always
appeal the issue of voluntariness." Delatorre v. State, 957 S.W.2d 145, 150 (Tex. App.--Austin
1997, pet. ref'd); see Flowers v. State, 935 S.W.2d 131, 133 (Tex. Crim. App. 1996). 

 Appellant's complaints about his lack of comprehension of his plea consist of three 
parts. First, he asserts that he entered his plea believing that he would get deferred adjudication
probation. Second, he contends that he did not understand that if he were sentenced to prison, he
would actually have to serve a fixed amount of time before becoming eligible for parole. Finally,
he cites his limited education and a learning disability as reasons for his lack of appreciation of
what he was doing when he pled guilty. 

 The purpose of the statute governing guilty plea admonitions is to assure that only
a constitutionally valid plea is entered and accepted by the trial court. Ex parte Morrow, 952
S.W.2d 530, 534 (Tex. Crim. App. 1997). The statutory procedure is to assure that a defendant
does not plead guilty without a full understanding of the charges against him and the consequences
of his plea. Delatorre, 957 S.W.2d at 152; see Tex. Code Crim. Proc. Ann. art. 26.13 (West
1989 & Supp. 1999). Once substantial compliance with the statute is shown, the burden shifts to
the defendant to affirmatively show that he entered his plea without understanding the
consequences of his actions and that he suffered harm from the misunderstanding. Fuentes v.
State, 688 S.W.2d 542, 544 (Tex. Crim. App. 1985); Delatorre, 957 S.W.2d at 151. 

 The record contains appellant's written plea and admonishments signed by him, his
counsel and the trial court. The docket sheet states that the court admonished appellant. The
judgment reflects that the court admonished appellant of the consequences of his plea, and states
that it plainly appeared that he was mentally competent and that the plea was free and voluntary. 
Numerous court of criminal appeals cases have held that the recitations in the judgment and other
portions of the record are binding on an appellant in the absence of direct proof to the contrary,
and that the appellant has the burden of overcoming the presumptions raised by the record in such
cases. See, e.g., Ex parte Wilson, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986) (op. on reh'g)
(presumption of voluntary plea absent evidence of erroneous advice from attorney). We determine
that the record reflects substantial compliance with the statutory admonishments. Appellant
acknowledges in his brief that he has the burden to show that counsel made a misrepresentation
or omission so substantial it resulted in the plea being involuntary. 

 Appellant cites West v. State, 702 S.W.2d 629 (Tex. Crim. App. 1986), withdrawn
on procedural grounds, 725 S.W.2d 718, 719 (Tex. Crim. App. 1987), to support his position that
trial counsel's failure to inform appellant fully caused appellant to lack adequate understanding of
the possible consequences of his plea. In West, counsel advised the defendant to reject the state's
plea bargain offer of fifteen years and plead guilty without a negotiated agreement because the
defendant was eligible for deferred adjudication and in counsel's opinion, even if the trial court
did not grant deferred adjudication, he would assess lower punishment than the State had offered. 
The strategy was unsuccessful and defendant was sentenced to a greater sentence than he expected,
twenty-five years. The court held that defense counsel's advice was not outside the range of
competence demanded of attorneys in criminal cases and that the advice did not render defendant's
guilty plea unknowing or involuntary. West does not support appellant's position. To the
contrary, it has been cited for the proposition that a plea of guilty is a trial strategy, and the plea
is not involuntary merely because the resulting sentence is greater than expected. See Culver v.
State, 786 S.W.2d 7, 9 (Tex. App.--Beaumont 1990, pet. ref'd).

 Nothing in the record suggests that appellant's attorney misinformed appellant about
any aspect of the case. Appellant has not borne his burden to show that he was misled by his
lawyer, or by the court or anyone else in a position of authority, into believing that he was
guaranteed to get deferred adjudication. Everything in the record is to the contrary and appellant
testified that neither the lawyer nor trial court told him he would get deferred adjudication
probation. 

 The next part of appellant's complaint is that no one told him that if he were sent
to prison he would have to serve a certain period of time before becoming eligible for parole. The
record does not show that anyone undertook to advise appellant of the laws or rules relating to
parole, thus there was no misinformation given on this subject. Even if there had been erroneous
advice about parole eligibility and appellant relied upon it, this would not necessarily render the
plea involuntary. The attainment of parole is so speculative that erroneous advice regarding the
number of years to be served before being eligible for parole would not itself render a guilty plea
involuntary. Ex parte Stephenson, 722 S.W.2d 426, 428 (Tex. Crim. App. 1987); Ex parte
Wilson, 716 S.W.2d 953, 958 (Tex. Crim. App. 1986); Ex parte Hughling, 706 S.W.2d 662, 663
(Tex. Crim. App. 1986); Ex parte Evans, 690 S.W.2d 274, 279 (Tex. Crim. App. 1985); Curry
v. State, 861 S.W.2d 479, 483 (Tex. App.--Fort Worth 1993, pet. ref'd). If, however, parole
eligibility was an element of the plea bargain, the plea of guilty may be rendered involuntary. See 
 Ex parte Pruitt, 689 S.W.2d 905 (Tex. Crim. App. 1985). There was no plea bargain here, and
appellant has not shown that he relied on any representation by anyone in a position of authority
regarding his possible parole eligibility in deciding to plead guilty. 

 Finally, appellant suggests that his limited education and learning disability affected
his comprehension and understanding of making a plea of guilty. Appellant does not pose this part
of his argument in terms of competency to stand trial, but we believe that standard is the one
appellant must meet in order to prevail on this part of his argument. Competency to stand trial
is presumed, and if a hearing is held on the issue, incompetency must be proved by a
preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 46.02, § 2(b) (West 1979). The
test for competency is whether the person has sufficient present ability to consult with his lawyer
with a reasonable degree of rational understanding or whether he has a rational as well as factual
understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46.02, § 1(a). 
See Arnold v. State, 873 S.W.2d 27, 36-37 (Tex. Crim. App. 1993), cert. denied, 513 U.S. 830
(1994). There is no evidence in the record that raised an issue of mental competency. When the
plea was taken, the trial court, the defense attorney and appellant all indicated that they thought
appellant was competent to stand trial. The judgment states that it plainly appeared to the trial
court that appellant was mentally competent. 

 Appellant's testimony that he was a slow learner in school and dropped out in the
tenth grade is not sufficient to raise an issue of competence. Testimony that a defendant had
learning disabilities and was in special education classes did not raise the issue of competency in 
Culley v. State, 505 S.W.2d 567, 569 (Tex. Crim. App. 1974). In Ortiz v. State, 866 S.W.2d
312, 316 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd), that court held that evidence of
learning disabilities alone was not sufficient to show that defendant was not competent to stand
trial. Evidence that a person has been judicially determined to be incompetent to handle his own
affairs is not conclusive evidence of incompetency to stand trial. See Koehler v. State, 830
S.W.2d 665, 666-67 (Tex. App.--San Antonio 1992, no pet.). The fact that a defendant rebelled
against authority, was socially maladjusted, had learning disabilities and possible neurological
problems did not raise the issue of competency to enter his guilty pleas. Brown v. State, 960
S.W.2d 772, 778-79 (Tex. App.--Dallas 1997, pet. ref'd).

 The admission of a confession requires a determination of voluntariness, just as the
making of a plea of guilty does. We find cases on confessions analogous and helpful in
considering appellant's argument that his slowness in learning and limited education made him
unable to comprehend the proceedings and his actions in them. Mental deficiency is a factor, but
not alone determinative, in ascertaining the voluntariness of a confession and the waiver of rights
necessary to give a confession. Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995).
The court of criminal appeals has found confessions to have been voluntarily made despite the
person's illiteracy. Westley v. State, 754 S.W.2d 224, 227 (Tex. Crim. App. 1988) (inability to
read and write, low level of intellect and little educational experience did not prevent defendant
from understanding warnings read to him and waiving them); Combs v. State, 643 S.W.2d 709,
711-14 (Tex. Crim. App. 1982) (mentally retarded person with I.Q. of 55 to 70, with a
functioning age level of 5 to 8 years, and unable to read or write, was mentally capable of
voluntarily waiving his constitutional rights); Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim.
App. 1970) (confession admissible even though defendant had I.Q. of 68, was illiterate, and had
mental age of eight to ten years); White v. State, 591 S.W.2d 851, 858 (Tex. Crim. App. 1979)
(confession admissible even though defendant was borderline mentally retarded); Bell v. State, 582
S.W.2d 800, 809 (Tex. Crim. App. 1979) (mildly retarded person who participated in a special
education program was not incapable of waiving rights and making confession); Grayson v. State,
438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (statements admissible from defendant with I.Q.
of 51 and mental age of six years). This Court has said that the mere fact that a defendant is
uneducated and illiterate does not mean that he does not understand the nature of the rights he is
waiving and cannot voluntarily give a confession. Peacock v. State, 819 S.W.2d 233, 235 (Tex.
App.--Austin 1991, no pet.).

 The record shows that appellant appeared competent by observation of the trial
court and appellant's attorney. No issue was raised as to competency at trial. Appellant's vague
claim at the hearing on new trial that he did not understand the consequences of his plea is not
sufficient to overcome the presumption of mental competence or his written acknowledgment to
the contrary that he did understand the consequences of his plea. His claimed mental and
educational deficiencies of being a slow learner and a tenth-grade dropout do not approach the
level of incompetence necessary to show lack of capacity to voluntarily waive rights and make
important decisions as shown by the cases cited above. Appellant has not shown any failure on
the part of his trial attorney or the trial judge in communicating the admonishments and fully
advising him of the consequences of his plea. Nothing in the record suggests that appellant's
attorney misinformed appellant about any aspect of the case. We believe that the record shows
that appellant's plea of guilty was voluntarily made. The trial court did not err in denying the
motion for new trial. We overrule appellant's point of error. 


Conclusion 

 Having overruled appellant's point of error, we affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: March 11, 1999

Do Not Publish




* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The parties agree that this was a correct statement of the law.


ng of a plea of guilty does. We find cases on confessions analogous and helpful in
considering appellant's argument that his slowness in learning and limited education made him
unable to comprehend the proceedings and his actions in them. Mental deficiency is a factor, but
not alone determinative, in ascertaining the voluntariness of a confession and the waiver of rights
necessary to give a confession. Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995).
The court of criminal appeals has found confessions to have been voluntarily made despite the
person's illiteracy. Westley v. State, 754 S.W.2d 224, 227 (Tex. Crim. App. 1988) (inability to
read and write, low level of intellect and little educational experience did not prevent defendant
from understanding warnings read to him and waiving them); Combs v. State, 643 S.W.2d 709,
711-14 (Tex. Crim. App. 1982) (mentally retarded person with I.Q. of 55 to 70, with a
functioning age level of 5 to 8 years, and unable to read or write, was mentally capable of
voluntarily waiving his constitutional rights); Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim.
App. 1970) (confession admissible even though defendant had I.Q. of 68, was illiterate, and had
mental age of eight to ten years); White v. State, 591 S.W.2d 851, 858 (Tex. Crim. App. 1979)
(confession admissible even though defendant was borderline mentally retarded); Bell v. State, 582
S.W.2d 800, 809 (Tex. Crim. App. 1979) (mildly retarded person who participated in a special
education program was not incapable of waiving rights and making confession); Grayson v. State,
438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (statements admissible from defendant with I.Q.
of 51 and mental age of six years). This Court has said that the mere fact that a defendant is
uneducated and illiterate does not mean that he does not understand the nature of the rights he is
waiving and cannot voluntarily give a confession. Peacock v. State, 819 S.W.2d 233, 235 (Tex.
App.--Austin 1991, no pet.).

 The record shows that appellant appeared competent by observation of the trial
court and appellant's attorney. No issue was raised as to competency at trial. Appellant's vague
claim at the hearing on new trial that he did not understand the consequences of his plea is not
sufficient to overcome the presumption of mental competence or his written acknowledgment to
the contrary that he did understand the consequences of his plea. His claimed mental and
educational deficiencies of being a slow learner and a tenth-grade dropout do not approach the
level of incompetence necessary to show lack of capacity to voluntarily waive rights and make
important decisions as shown by the cases cited above. Appellant has not shown any failure on
the part of his trial attorney or the trial judge in communicating the admonishm